UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| DARIN COLLINS, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil No. 13-181-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| PENSKE TRUCK LEASING ) | **AND ORDER** |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Judges are "not like pigs, hunting for truffles that might be buried in the record." *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (internal quotation marks omitted). Thus, if a party moves for summary judgment and argues that a dispute of fact is not a "genuine" one, the other party must point to evidence showing that it is. *Id.* Here, Darin and Anna Collins sued Penske Truck Leasing Corporation ("Penske") for damages that Darin sustained while working as a telecommunications repairman. Their primary claim is that Penske negligently maintained Darin's "bucket truck," *i.e.*, the crane/pickup-truck hybrid that repairmen use to access utility poles. Penske now moves for summary judgment, arguing that the record contains no evidence that would allow a reasonable jury to find that Penske maintained the truck in a negligent way. The Collinses identify no such evidence in their response brief, which means Penske is entitled to summary judgment on the negligent-maintenance claim. The Collinses also brought three other claims—for negligent failure to warn, loss of consortium, and punitive damages—and Penske argues that it is entitled to summary judgment on those claims as well. Since the

Collinses fail to mention those claims in their brief at all, Penske is entitled to summary judgment on those claims, too.

## I.

### A.

For around twenty years, Darin Collins worked as a field-repair technician for Cincinnati Bell Telephone. R. 63-2 at 7. In August 2012, he drove to a rural area of Pendleton County, Kentucky, to install equipment at a house there. Collins placed his bucket truck on a sloped gravel driveway near the house, went aloft in the bucket, and began working on a nearby utility pole. R. 63-2 at 70, 96. At some point while he was working, the truck rolled down the driveway, and he fell out of the bucket. R. 63-2 at 96. As a result, Collins sustained injuries to his head, spine, wrist, and elbow. R. 63-2 at 142–43.

Immediately after the accident, Cincinnati Bell took the truck to a nearby car dealer, Fuller Ford, for an independent inspection. R. 63-7 at 37–38. The service manager at Fuller Ford noted that, although the gear shifter was a bit loose, he was not able to pull it out of the "park" position even when he jerked on it. R. 65-2 at 2. The service manager also tested the parking brake. When he set the brake, the truck was "barely able to creep . . . forward [even] under engine power." *Id.*

A few days later, technicians at Fuller Ford disassembled the transmission. After testing it, Fuller's service manager determined that the transmission could not be pulled out of "park" when it was placed in that position properly. R. 65-3 at 2. They also tested the parking brake outside of the repair shop. The brake held the vehicle on a steep incline, even when the vehicle was placed in "neutral" without any chock blocks. R. 63-9 at 25–26.

2

Cincinnati Bell's fleet manager compared several pictures of the parking brake that were taken at the accident scene and at Fuller Ford. R. 63-7 at 7–8. In his view, those pictures revealed that "the parking brake [at the accident scene] was not fully engaged, if it was engaged at all." R. 63-7 at 51. He also noted that the parking brake was functioning properly: he had no trouble setting it or releasing it, and the brake held the vehicle firmly. Indeed, when he gunned the engine with the transmission in "drive," the truck moved only "an inch to two inches." R. 63-7 at 43.

As a result of these tests, Fuller Ford's service manager concluded that, if the vehicle had been properly placed in "park," if the parking brake had been set, and if the chock blocks had been used properly, then the vehicle would not have rolled. R. 63-9 at 41. The fleet manager agreed with that conclusion. He testified in his deposition that the tests demonstrated no "mechanical deficiency in the vehicle that caused or contributed to the accident." R. 63-7 at 67. In his view, "if the vehicle had been placed in park, the parking brake had been fully engaged and the wheel chocks properly placed, this accident wouldn't have happened[.]" R. 63-7 at 68.

As for Collins himself, he suffered memory loss as a result of the head injuries. Hence he does not remember exactly how the accident occurred. Indeed, he remembers nothing at all from the day of the accident. R. 63-2 at 63, 96.

**B.**

In June 2013, Collins and his wife, Anna, sued Penske in Kentucky state court.[1] R. 1-1. At the time of the accident, Penske had been in charge of maintaining Cincinnati Bell's entire fleet of vehicles, including Collins's bucket truck.[2] R. 67. The Collinses alleged that Penske negligently failed "to properly inspect, service, and/or repair the bucket truck," and that Penske negligently failed "to warn [Collins] of the foreseeable risk of the bucket trucks rolling and causing severe injuries." R. 1-1 at 8–9. Anna Collins sued for loss of consortium. *Id.* at 10–11. And both Collinses asked for punitive damages. *Id.* at 11.

The Collinses are Kentucky citizens, and Penske is a Delaware corporation with its principal place of business in Pennsylvania. R. 1 at 2. Hence Penske removed the case to this Court on the basis of diversity jurisdiction. R. 1; *see* 28 U.S.C. § 1332. Penske now moves for summary judgment. R. 65.

**II.**

A court must grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if there is evidence that would allow a reasonable jury to find for the non-moving party as to that dispute. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). And the non-moving party must bring

---

[1] They also sued Ford Motor Company, which manufactured the bucket truck, but later agreed to dismiss Ford from this case. R. 32; *see* Fed. R. Civ. P. 41(a)(1)(i).

[2] The parties spend a great deal of their briefs arguing about whether the Collinses sued, for lack of a better phrasing, "the right Penske." Specifically, the Penske entity that the Collinses sued—Penske Truck Leasing Corporation—says that another Penske entity—Penske Truck Leasing Co., L.P.—was the one that maintained the truck and thus was the proper defendant. R. 65-1 at 2. Penske therefore argues that it is entitled to summary judgment on that basis alone. The Court need not address that argument, however, since Penske is entitled to summary judgment on other grounds.

that evidence to the attention of the Court. If a party moves for summary judgment and argues that a certain dispute of fact is not a "genuine" one, then the non-moving party must "come forward with specific facts showing that" it is. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

The Court can quickly resolve almost all of Penske's arguments. Penske argues in its opening brief that it is entitled to summary judgment on the plaintiff's claims for negligent failure to warn, loss of consortium, and punitive damages. The plaintiffs explain nowhere in their response brief why those arguments are invalid, *i.e.*, why Penske is not entitled to summary judgment on those three claims. Indeed, the plaintiffs do not mention those claims in their brief at all. Thus, the plaintiffs have failed to meet their burden to "come forward with specific facts showing that there is a genuine issue for trial" on their failure-to-warn, punitive-damages, and loss-of-consortium claims. *Matsushita*, 475 U.S. at 587 (internal emphasis and quotation marks omitted). Penske is therefore entitled to summary judgment as to those three claims.

Penske's final argument—that it is entitled to summary judgment on the plaintiff's negligent-maintenance claim—requires slightly more analysis. To prevail on a negligence claim under Kentucky law—which the parties agree applies here—a plaintiff must show among other things that the defendant breached a duty of care owed to the plaintiff. *See Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). That means the plaintiffs must ultimately prove that Penske failed to maintain the truck with "ordinary care," *i.e.*, that Penske failed to use "such care as a reasonably prudent person would exercise under the circumstances." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012). At the

summary-judgment stage, the question is simply whether the plaintiffs have produced enough evidence to allow a reasonable jury to find that Penske failed to do so.

Penske contends that there is no such evidence. Specifically, Penske says that there is no evidence that Penske "failed to address or repair any maintenance issue brought to its attention by Collins," "failed to diagnose or failed to correct a mechanical vehicle during preventative maintenance," or "improperly made any repairs to the bucket truck during preventative maintenance." R. 65-1 at 24. According to Penske, there is therefore no evidence that Penske made a mistake in maintaining the truck at all, much less a mistake that a "reasonably prudent person" would have avoided under the circumstances. Thus, Penske argues, no reasonable juror could find that it maintained the truck negligently.

In response, the plaintiffs point to one piece of evidence that, according to them, shows that Penske negligently failed to maintain the truck. That piece of evidence is Collins's statement that he "brought [the truck] to Penske to have it looked at for a gear shift problem" before the accident, and a Penske employee "failed to inspect the vehicle, telling [Collins] to bring it back if he had any more issues." R. 69 at 9.

One can imagine the Court's surprise when it learned about this statement. After all, Penske told the Court in its motion for summary judgment that "there is no [evidence] that [Penske] failed to address or repair any maintenance issue brought to its attention by Collins." R. 65-1 at 24. Collins's statement that Penske failed to repair a gear-shift problem—even after Collins brought that issue to Penske's attention—would certainly qualify as such evidence. One is thus entitled to ask, it would seem, just what is going on here.

6

It is for times like this that we have reply briefs. Penske points out in its reply that Collins's statement comes from an affidavit that he gave on August 22, 2015. R. 69-3 at 2. To summarize the timeline: on August 3, Penske points out in its motion for summary judgment that no evidence in the record suggests Penske made any mistakes in maintaining the truck. Then, three weeks later, Collins gives an affidavit in which he says he told Penske about a gear-shift problem before the accident. Thus, the plaintiffs now argue, Collins's affidavit creates a genuine issue as to whether Penske negligently maintained the truck.

The problem with that argument is that "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts [the party's] earlier . . . testimony." *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997). It is easy to see the reason for this rule. As the Sixth Circuit rather dryly understates the point, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, [that] would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Here, Collins stated in his August 22nd affidavit that he had noticed problems with the gear shifter, and that he had reported those problems to Penske before the accident. R. 69-3. During his earlier deposition, however, he said something a bit different. There, counsel asked Collins whether he agreed with the following statement: "[Y]ou weren't experiencing—at least with respect to the gear shifter[—]you didn't have any problems with it." R. 63-2 at 124. Collins responded as follows: "I had no problems with it [*i.e.*, the gear shifter] prior [to the accident]." *Id.* Thus, the statements Collins made in his affidavit

7

"essentially contradict[]" those he made during his deposition. *Penny*, 128 F.3d at 415. And because the plaintiffs filed that affidavit "after a motion for summary judgment [had] been made," the statements Collins made therein cannot, as a matter of law, create a "genuine issue of material fact." *Id.*

Although the plaintiffs fail to identify any other evidence that supports their negligent-maintenance theory specifically, the Court does note that they make two more-general references to the report of their purported expert witness, Carl Sandler. The first reference is in the last paragraph of the facts section, in which the plaintiffs note vaguely that Sandler "reach[ed] conclusions as to the maintenance of the vehicle and the cause of the incident, as detailed in his expert report." R. 69 at 5. The second is in the causation section of their brief, in which the plaintiffs note that Sandler "stated in his report that the deficiency in the shift control mechanism is responsible for the vehicle becoming disengaged from 'park' and moving down the hill. It is a matter of fact for the jury to determine if they believe [Sandler's opinion] that the shift control mechanism caused the vehicle to move." *Id.* at 9.

Those two off-hand references—the only ones that the plaintiffs make to Sandler's report—do not satisfy the plaintiff's burden to "come forward with specific facts showing that there is a genuine issue [warranting a] trial." *Matsushita*, 475 U.S. at 587. For "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). And that is exactly what the plaintiffs have left to the Court to do here with respect to Sandler's report. Nowhere do the plaintiffs explain exactly what they would expect Sandler

to say at trial. Nowhere do they explain what portions of his report suggest that Penske failed to fix a gear-shift problem that Penske should have noticed. And, most importantly, nowhere do they explain how Sandler's report would allow a reasonable jury to conclude that Penske negligently maintained Collins's truck.

Moreover, Sandler conceded in his deposition that, although he believed that there was a problem with the truck's gear-shift mechanism on the day of the accident, he had no idea "when [that] condition started to develop." R. 63-8 at 17. Thus, his testimony in no way suggests that, *before* the accident, there was a gear-shift problem that Penske's technicians should have noticed when they maintained the vehicle. Sandler also conceded that, as far as he knew, the last maintenance check-up that Penske performed on the truck was "conducted in accordance with . . . normally accepted industry practices." *Id.* And he conceded that, as far as he could tell, that check-up was performed "consistent with good fleet maintenance practices[.]" R. 63-8 at 17. Thus, although the plaintiffs have not identified exactly which portions of Sandler's testimony they are referencing, it is clear that his testimony, when considered in its entirety, would not allow a reasonable jury to conclude that Penske maintained the bucket truck negligently.

In the end, the plaintiffs have identified no other evidence from which a reasonable jury could find that Penske negligently failed to maintain the truck. Hence they have failed to show a "genuine" dispute as to whether Penske did so. *See White*, 533 F.3d at 390. Penske is thus entitled to summary judgment on the plaintiffs' negligent-maintenance claim as well.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)   Defendant Penske Truck Leasing Corp.'s motion for summary judgment, R. 65, is **GRANTED**.

(2)   All pending deadlines and hearings are **CANCELLED**.

(3)   The Clerk of the Court shall **STRIKE** this case from the Court's active docket.

(4)   All other pending motions are **DENIED** as **MOOT**.

(5)   A separate judgment will issue.

This the 28th day of September, 2015.

Signed By:
*Amul R. Thapar* AT
United States District Judge